# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JESUS T. CHAVEZ,

    Defendant.

Case No. 2:17-CR-40106-01-HLT

## MEMORANDUM AND ORDER

The operative two-count Superseding Indictment charges Defendant Jesus T. Chavez with possession with intent to distribute a controlled substance (Count 1) and aggravated reentry of a removed alien in violation of 8 U.S.C. § 1326(a) (Count 2). Doc. 42 at 1-2. Defendant seeks dismissal of Count 2—aggravated reentry of a removed alien—arguing his prior removal from the United States was invalid because the Immigration Court lacked jurisdiction (both subject-matter and personal) to enter the underlying removal order.[1] Doc. 59; Doc. 60 at 3-13. Because the Court

---

[1] In his briefing, Defendant also contends Count 2 should be dismissed because his underlying state court conviction does not qualify as an "aggravated felony" under 8 U.S.C. § 1101(a)(43) (2012). Doc. 60 at 13-19. The Government responds that that the "aggravated felony" component of Count 2 is not an element of the offense charged that requires proof before a jury at trial. Doc. 65 at 26-33. Rather, Defendant is charged with reentering the United States illegally after being removed. *Id.* If convicted, the existence of Defendant's underlying conviction for an "aggravated felony" at the time of his illegal reentry is relevant for purposes of a sentencing enhancement only. *Id.* For this reason, the Government argues this portion of Defendant's briefing is inappropriate for the Court's consideration in the context of a motion to dismiss. *Id.* At oral argument, Defendant conceded that the "aggravated felony" component is not an element of the offense charged that requires proof to the jury and is relevant only to sentencing. But, because the Superseding Indictment characterizes Defendant's underlying state court conviction as an "aggravated felony," Defendant feared any argument on the issue would be waived if not raised in a pretrial motion. *See* FED. R. CRIM. P. 12(b)(6). The Court concludes that the determination of whether Defendant's underlying conviction is properly characterized as an "aggravated felony" under § 1101(a)(43) is not an element of the offense charged, is relevant only to sentencing, and does not require proof before a jury beyond a reasonable doubt. *See Apprendi v. New Jersey*, 530 U.S. 466, 495-96 (2000); *Almendarez-Torres v. United States*, 523 U.S. 224, 226 (1998); *United States v. Martinez-Villalva*, 232 F.3d 1329, 1332 (10th Cir. 2000); *United States v. Wilson*, 30 F. App'x 924, 925-26 (10th Cir. 2002). Thus, the question of whether Defendant's underlying state court conviction qualifies as an "aggravated felony" is not a question the Court needs to resolve at this stage of the proceedings. The Court has, however, reviewed the parties' briefing and Defendant will not be precluded from raising the issue should these proceedings extend to a sentencing phase.

concludes Defendant's prior removal from the United States was valid, Defendant's motion is denied.

I. **BACKGROUND**[2]

Defendant entered the United States at Los Angeles, California, on June 10, 2004. Gov. Exh. 1 at 1. He was admitted as an IR6 Legal Permanent Resident (the spouse of a United States citizen). *Id.* On March 4, 2010, an Oklahoma state court convicted Defendant of trafficking in an illegal drug (methamphetamine) and sentenced Defendant to fourteen years' imprisonment. Gov. Exhs. 2 and 3. Ten days later, on July 11, 2014, while incarcerated, immigration authorities served Defendant with a Notice to Appear for removal proceedings under section 240 of the Immigration and Nationality Act. Gov. Exh. 4. The Notice to Appear stated that Defendant was "subject to removal from the United States" and ordered him to appear before an immigration judge. *Id.* at 1. The Notice to Appear did not specify the date and time of Defendant's removal hearing. *Id.* Instead, it said the date and time were "to be set." *Id.* Defendant executed the Certificate of Service appearing at the bottom of the Notice to Appear. *Id.* at 2.

On the same day the Notice to Appear was served, Defendant signed a written request for a hearing before the Immigration Court to determine whether he could remain in the United States. *Id.* at 3. On July 21, 2014, the Immigration Court ordered Defendant removed from the United States. Gov. Exh. 6. The removal order was served on Defendant the same day by personal service and shows that both Defendant and the Government waived the right to appeal the decision. *Id.*

---

[2] At the hearing on Defendant's motion, the Government admitted seven exhibits into the record, without objection from Defendant, consisting of portions of Defendant's immigration records, records documenting Defendant's underlying state court conviction, and records from Defendant's removal proceedings before the Immigration Court. Because neither party challenges the authenticity of these documents, and both parties acknowledged at the hearing that the facts giving rise to Defendant's motion to dismiss are not in dispute, the Court considers the Government's exhibits in ruling on Defendant's motion.

at 2. Pursuant to the Immigration Court's removal order, Defendant was removed from the United States on July 31, 2014. Gov. Exh. 7.

On October 12, 2017, just over three years after his removal from the United States, law enforcement found Defendant in Kansas in possession of over 500 grams of a substance containing a detectable amount of methamphetamine. Doc. 42 at 1. The original indictment in the current proceedings charged Defendant with a single count of possession with intent to distribute a controlled substance. Doc. 1 at 1. On June 27, 2018, the Government filed the operative Superseding Indictment, charging Defendant with possession with intent to distribute a controlled substance (Count 1) and aggravated reentry of a removed alien (Count 2). *Id.* at 1-2.

## II. STANDARD

Rule 12(b)(2) of the Federal Rules of Criminal Procedure "permits pretrial resolution of a motion to dismiss the indictment only when 'trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense.'" *United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010) (quoting *United States v. Covington*, 395 U.S. 57, 60 (1969)). Generally, "an indictment should be tested solely on the basis of the allegations made on its face, and such allegations are to be taken as true." *United States v. Todd*, 446 F. 3d 1062, 1067 (10th Cir. 2006) (internal quotation omitted). However, a court "may entertain motions that require it to answer only pure questions of law," and may also consider motions to dismiss that require consideration of facts outside the indictment "in the 'limited circumstances' where '(1) the operative facts are undisputed and (2) the government fails to object to the district court's consideration of those undisputed facts,' and (3) the district court can determine from them that, 'as a matter of law, the government is incapable of proving its case

beyond a reasonable doubt.'" *Pope*, 613 F.3d at 1260-61 (quoting *United States v. Hall*, 20 F.3d 1084, 1088 (10th Cir. 1994)); *see also Todd*, 446 F.3d at 1068.

**III.   ANALYSIS**

Count 2 charges Defendant with illegal reentry of a removed alien in violation of 8 U.S.C. § 1326(a).[3] To convict a defendant charged with illegal reentry of a removed alien the government must prove that: (1) the defendant was "removed [from] the United States while an order of . . . removal is outstanding"; and (2) the defendant later "entere[ed], attempt[ed] to enter, or is at any time found in, the United States."[4] *United States v. Adame-Orozco*, 607 F.3d 647, 651 (10th Cir. 2010) (quoting 8 U.S.C. § 1326(a)). The government may satisfy the first element by producing evidence that the defendant was removed while an order of removal was outstanding against him. *See id.* (discussing the government's production of evidence in support of the defendant's deportation while a deportation order was outstanding). In defense, a defendant often attacks the validity of the underlying removal order, and this defense is specifically recognized in subsection (d) of the same statutory scheme that sets forth the elements of the offense. *See id.* (discussing the defense of collateral attack of an underlying removal order under § 1326(d)).

Count 2 and Defendant's motion to dismiss raise this exact scenario. The Government alleges Defendant was removed from the United States while an order of removal was outstanding. Defendant challenges the validity of the underlying removal order. But Defendant does not rely merely on a traditional theory of collateral attack of the underlying removal order under § 1326(d). His argument is bolstered by recent Supreme Court precedent that he contends bears directly on

---

[3] Defendant only seeks dismissal of Count 2; he does not seek dismissal of Count 1 of the operative indictment. Doc. 59.

[4] Certain exceptions, not relevant to the Court's analysis, can be found in 8 U.S.C. § 1326(a)(2).

the issue of the Immigration Court's jurisdiction to conduct the underlying immigration proceedings and, thus, the validity of the underlying removal order.

Defendant contends that the Supreme Court's recent holding in *Pereira v. Sessions*, 138 S. Ct. 2105, 2113-14 (2018) establishes that the notice to appear is the document which vests the immigration court with jurisdiction. And when a notice to appear lacks the time and date of the hearing, the immigration court never obtains jurisdiction over the immigration proceedings. Any ruling or order issued by the immigration court, thus, is void. Doc. 60 at 3-7. Defendant further contends *Pereira* has substantially altered a defendant's burden for successfully mounting a collateral attack against an underlying removal order under 8 U.S.C. § 1326(d) and that, under the post-*Pereira* approach, he can satisfy § 1326(d)'s requirements. The Government rejects Defendant's interpretation of *Pereira* and argues for a traditional application of § 1326(d). Doc. 60 at 5-23.

### A. *Pereira* Opinion

*Pereira* involved the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). 138 S. Ct. at 2109. Under IIRIRA, aliens subject to removal from the United States are eligible for cancellation of removal if, among other things, they have been physically present in the United States for a continuous period of ten or more years. 8 U.S.C. § 1229b(b)(1)(A) (2012). This is commonly referred to as the "stop-time rule." But, under the stop-time rule, the period of continuous presence ends if the alien "is served a notice to appear under section 1229(a)." *Id.* Section 1229(a) of the IIRIRA provides that the government will serve the alien a written "notice to appear" specifying, among other things, the "time and place at which removal proceedings will be held." *Id.* § 1229(a)(1)(G)(i). The government had a practice of issuing notices that state only that the removal proceeding will take place on a date and time "to be set." *Pereira*,

138 S. Ct. at 2111. Such was the case with the notice to appear received by the defendant in *Pereira*. *Id.* at 2112.

Pereira was a Brazilian citizen who overstayed his visa in the United States and was served with a notice to appear stating the time and date of his hearing was "to be set." *Id.* A year later, the immigration court mailed him a more specific notice setting the date and time of the initial hearing, but it was sent to the wrong address. *Id.* Pereira failed to appear, and the immigration court ordered him removed "in absentia." *Id.* Several years later, law enforcement arrested him, and the immigration court reopened the removal proceedings. *Id.* Pereira applied for cancellation of the removal, arguing he had been continuously present in the United States for over ten years. *Id.* But the immigration court applied the stop-time rule based on the date of service of the initial notice to appear—the one that did not contain a date or time for his hearing—and concluded Pereira was statutorily ineligible for cancelation of removal. *Id.* Pereira sought appellate review by the Board of Immigration Appeals and the First Circuit, but both appeals were denied. *Id.* at 2113-14. The Supreme Court granted certiorari to determine the "simple, but important question" of whether a notice to appear "that fails to specify 'the items listed' in § 1229(a)(1) trigger[s] the stop-time rule[.]" *Id.* at 2114.

The Supreme Court held that "[a] putative notice to appear that fails to designate the specific time or place of the noncitizen's removal proceedings is not a 'notice to appear under section 1229(a),' and so does not trigger the stop-time rule." *Id.* at 2113-14. In its analysis, the Supreme Court focused on the need to provide the noncitizen a meaningful opportunity to obtain counsel (if so desired) and prepare for and participate in the hearing. *Id.* at 2114-15. Because Pereira never received any notice of the hearing, he had no such opportunity. *Id.* The Supreme

6

Court reversed the denial of Pereira's appeal and the case was remanded for further proceedings consistent with the Supreme Court's opinion. *Id.* at 2120.

B.     **Application of *Pereira* in Illegal Reentry Cases**

*Pereira* involved a notice to appear in the context of the stop-time rule. It did not involve—and contained no discussion of—the crime of reentry of a removed alien in violation of 8 U.S.C. § 1326(a). In the wake of *Pereira*, however, numerous criminal defendants charged with illegal reentry under § 1326(a)—like Defendant—have begun to rely on *Pereira* to challenge the validity of the underlying removal (or deportation) order when the notice to appear they received from immigration authorities lacked the time and date of the hearing. And a split exists among federal district courts as to the scope and effect of *Pereira* on illegal reentry prosecutions under § 1326(a) when the defendant's notice to appear was defective as recognized in *Pereira*.

Defendant relies on four post-*Pereira* cases that have applied *Pereira* broadly and held that a defective notice to appear divests the immigration court of subject-matter jurisdiction, is null and void, and cannot support a § 1326(a) prosecution for illegal reentry—relieving the defendant of the burden of meeting § 1326(d)'s requirements for a collateral attack of a removal order. *See United States v. Ortiz*, 2018 WL 6012390, at *2-4 (D.N.D. 2018); *United States v. Zapata-Cortinas*, 2018 WL 4770868, at *2-5 (W.D. Tex. 2018); *United States v. Pedroza-Rocha*, No. 18-CR-1286 (W.D. Tex. 2018); *United States v. Virgen-Ponce*, 320 F. Supp. 3d 1164, 1165-1166 (E.D. Wash. 2018).

Other district courts—including courts within this district—have distinguished *Pereira* where the defendant received notice of the hearing and/or was present at the hearing. These courts have concluded that a defective notice of hearing alone does not satisfy—or obviate the need to satisfy—§ 1326(d)'s three requirements for collateral attack of a removal order. *See, e.g.*, *United States v. Hernandez-Velasco*, 2018 WL 5622285, at *2-4 (W.D. Okla. 2018); *United States v.*

*Briones-Herrera*, 2018 WL 5315211, at *1 (W.D. Okla. 2018); *United States v. Lira-Ramirez*, 2018 WL 5013523, at *4-7 (D. Kan. 2018); *United States v. Larios-Ajualat*, 2018 WL 5013522, at *4-7 (D. Kan. 2018); *United States v. Munoz-Alvarado*, 2018 WL 4762134, at *1 (W.D. Okla. 2018); *United States v. Ibarra-Rodriguez*, 2018 WL 4608503, at *2-3 (W.D. Okla. 2018); *United States v. Morales-Hernandez*, 2018 WL 4492377, at *1 (D. Az. 2018).

The Tenth Circuit has not addressed *Pereira*'s effect on illegal reentry cases or, specifically, its effect on § 1326(d)'s requirements for a defendant to collaterally attack an underlying removal order. But, historically, the Tenth Circuit has recognized the narrow circumstances under which a defendant can attack the validity of an underlying removal order, stating that:

> A defendant[ ] may challenge the legality of a [removal] order if, but only if, he can show that: (1) [he] exhausted any administrative remedies that may have been available to seek relief against the order; (2) the [removal] proceedings at which the order was issued improperly deprived the [defendant] of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair.

*Adame-Orozco*, 607 F.3d at 651 (quoting § 1326(d) (internal quotations omitted)). Because the removal order is presumed valid, the defendant bears the burden of establishing all three elements to overcome the presumed legality and mount a successful collateral attack. *Id.* (citing *United States v. Arevalo-Tavares*, 210 F.3d 1198, 1200 (10th Cir. 2000)). In light of this clear Tenth Circuit precedent, Defendant, the Government, and the Court agree that the starting point for analyzing Defendant's challenge to Count 2 must be § 1326(d)'s three requirements for a collateral attack.[5] Thus, Defendant's arguments, including his proposed interpretation of *Pereira*, are considered within the framework of a traditional § 1326(d) collateral attack analysis.

---

[5] Defendant's briefing suggested a § 1326(d) analysis might not be necessary or appropriate in light of *Pereira*. Doc. 60 at 4-8. At oral argument on his motion, however, Defendant conceded that a collateral attack analysis under § 1326(d) is the proper framework.

### C. Defendant Cannot Satisfy § 1326(d)'s Requirements for a Collateral Attack

As noted above, § 1326(d) includes three specific requirements for a defendant to collaterally attack an underlying removal order: (1) exhaustion of administrative remedies; (2) deprivation of the opportunity for judicial review; and (3) fundamental unfairness in entry of the removal order. Defendant contends, however, that *Pereira* (and subsequent district court opinions cited *supra* at pages 6-7), has drastically altered the required depth of this analysis and that, under this altered analysis, he satisfies § 1326(d)'s requirements. The Government contends *Pereira* has no effect on § 1326(d)'s strict requirements and that—absent an unjustifiably broad interpretation of *Pereira*—Defendant cannot mount a successful collateral attack against the underlying removal order. The Court agrees with the Government.

#### 1. Exhaustion of Administrative Remedies

Element one of § 1326(d) requires that Defendant exhaust any administrative remedies that may have been available to seek relief against the underlying removal order. Like the notice to appear in *Pereira*, Defendant's Notice to Appear did not include a date and time for the hearing before the Immigration Court. Defendant argues that, under *Pereira*, the defect in the Notice to Appear—i.e., the lack of a time and date for the hearing—divested the Immigration Court of subject-matter and personal jurisdiction. Because the Immigration Court lacked jurisdiction, Defendant contends the removal order is invalid (or void) and Defendant was not required to exhaust all available administrative remedies.[6] Defendant's arguments are unpersuasive. The

---

[6] Defendant does not contend that he exhausted all available administrative remedies. And any argument by Defendant that he did so would be futile. "An alien who knowingly waives the right to appeal an immigration judge's order of deportation fails to exhaust administrative remedies under § 1326(d)(1)." *United States v. Chavez-Alonso*, 431 F.3d 726, 728 (10th Cir. 2005). Defendant voluntarily waived his right to appeal the removal order. Gov. Exh. 6 at 2. Defendant does not argue the waiver was involuntary or unknowing.

Supreme Court's holding in *Pereira* does not support the conclusion that the defective Notice to Appear divested the Immigration Court of either subject-matter or personal jurisdiction.

### a. Subject-Matter Jurisdiction

To the extent Defendant contends an immigration court can be divested of subject-matter jurisdiction because of a defective notice to appear, the Court disagrees. He relies primarily on a federal regulation that states that "jurisdiction vests, and proceedings before an Immigration Judge commence, when a charging document[7] is filed with the Immigration Court . . . ." 8 C.F.R. § 1003.14(a). Defendant contends that, if "a notice to appear that fails to designate the specific time or place of the noncitizen's removal proceedings is not a 'notice to appear'"—as the Supreme Court stated in *Pereira*—then it must follow that: (1) a defective notice to appear means there is no charging document in light of *Pereira*; (2) no charging document means jurisdiction never vests in the immigration court by virtue of 8 C.F.R. § 1003.14(a); and (3) any removal order issued in immigration proceedings where the court lacks jurisdiction is void. Doc. 60 at 4-7.

Defendant's argument fails for two reasons. First, the requirements within 8 C.F.R. § 1003.14 are analogous to service of process in federal court and are an indication that the regulation addresses the immigration court's acquisition of personal jurisdiction, not subject-matter jurisdiction. In addition to the language quoted above, § 1003.14(a) goes on to state that the charging document must include a certificate of service on the opposing party. The Tenth Circuit has recognized that "service of process provides the mechanism by which a court having venue and jurisdiction over the subject-matter of an action asserts jurisdiction over the person of the party served." *Okla. Radio Assocs. v. F.D.I.C.*, 969 F.2d 940, 943 (10th Cir. 1992); *see also Larios-*

---

[7] The Tenth Circuit recognizes that the notice to appear is the "charging document." *Yang You Lee v. Lynch*, 791 F.3d 1261, 1265 (10th Cir. 2015).

*Ajualat*, 2018 WL 5013522, at *6 n.4 (discussing § 1003.14(a) in the context of subject-matter and personal jurisdiction); *Lira-Ramirez*, 2018 WL 5013523, at *6 n.4 (same).

Second, like the subject-matter jurisdiction of federal courts, an immigration court's subject-matter jurisdiction is determined by statute, not by acts taken by immigration authorities. Congress has specifically authorized immigration judges to conduct removal proceedings and to decide whether an alien is removable under immigration laws. 8 U.S.C. § 1229a(a) and (c); *see also Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxitess de Guinee*, 456 U.S. 694, 702 (1982) (recognizing that subject-matter jurisdiction is a constitutional and statutory requirement and no action of the parties can confer subject-matter jurisdiction); *see also Larios-Ajualat*, 2018 WL 5013522, at *6 n.4 (discussing § 1003.14(a) in the context of subject-matter and personal jurisdiction); *Lira-Ramirez*, 2018 WL 5013523, at *6 n.4 (same).

The Immigration Court had subject-matter jurisdiction over Defendant's removal proceedings by virtue of 8 U.S.C. § 1229a(a) and (c). And 8 C.F.R. § 1003.14(a) addresses the manner in which the Immigration Court would necessarily have obtained personal jurisdiction over Defendant for those proceedings—i.e., proof of service of the Notice to Appear—but 8 C.F.R. § 1003.14(a) does not speak to the Immigration Court's subject-matter jurisdiction.

          **b.**       **Personal Jurisdiction**

To the extent Defendant contends the defective Notice to Appear divested the Immigration Court of personal jurisdiction, this argument is also unavailing. As noted, 8 C.F.R. § 1003.14(a) states that the notice to appear must include a certificate showing service on the opposing party and it is this requirement that is analogous to service of process in federal court. Here, Defendant signed the Certificate of Service indicating receipt of the Notice to Appear. Gov. Exh. 4 at 2. Receipt is sufficient for purposes of service of process regardless of the absence of the date and time of the hearing on the Notice to Appear. *See Okla. Radio Assocs.*, 969 F.2d at 943.

Additionally, Defendant voluntarily submitted to the jurisdiction of the Immigration Court by participating in the removal proceedings subsequent to his receipt of the defective Notice to Appear. *See Hopper v. Wyant*, 502 F. App'x 790, 792 (10th Cir. 2012) (quoting *Compagnie des Bauxites de Guinee*, 456 U.S. at 703-04 ("'[A]n individual may submit to the jurisdiction of the court by appearance,' and voluntary use of certain court procedures may constitute constructive consent to the personal jurisdiction of the court.")). On the same day the Notice to Appear was served, Defendant signed a written request for a hearing to determine whether he could remain in the United States. Gov. Exh. 4 at 3. And, when the removal order was issued, Defendant waived his right to appeal the decision. Gov. Exh. 6 at 2. Defendant does not contend any of these acts were involuntary or unknowing and, thus, cannot argue the Immigration Court lacked personal jurisdiction.

### c. *Pereira*'s Holding is Limited

In addition to its specific analysis of the subject-matter and personal jurisdiction issues, the Court also notes that, while the Notice to Appear issued to Defendant was defective under *Pereira*, the Court cannot expand *Pereira*'s holding beyond its clear limitations as Defendant requests. In *Pereira*, the question before the Supreme Court on certiorari was limited to the context of § 1299(a)(1) and the stop-time rule. 138 S. Ct. at 2113. And the language of the opinion is also very carefully crafted. Each time the errors in the notice to appear are discussed, application of the issue is specifically limited to the stop-time rule. *See, e.g.*, *id.* at 2112, 2114, 2117. The Supreme Court did not find that the immigration court lacked jurisdiction, or discuss the issue of jurisdiction at all.[8]

---

[8] The Court further notes that the Supreme Court's remand of Pereira's appeal for further proceedings without any suggestion that its holding had either subject-matter or personal jurisdiction implications seems inconsistent with the conclusion that the underlying proceedings were entirely void for want of jurisdiction. *See Pereira*, 138 S. Ct. at 2120 (reversing and remanding).

The Court cannot extend *Pereira* beyond its application to the stop-time rule. Defendant's Notice to Appear, although defective, had no effect on the Immigration Court's jurisdiction (either subject-matter or personal) and the underlying removal order is valid. *Pereira* does not relieve Defendant of his burden under § 1326(d) to show he exhausted all administrative remedies that may have been available to seek relief against the underlying removal order. He failed to do so and, thus, cannot satisfy even the first of § 1326(d)'s three elements for a collateral attack to invalidate the removal order. Because defendant cannot satisfy the first element, his ability (or inability) to satisfy the second and third elements is irrelevant.[9]

## IV. CONCLUSION

For the above reasons, the Court concludes that the Immigration Court properly exercised subject-matter and personal jurisdiction in the underlying removal proceedings, that the underlying removal order is valid, and that Defendant's removal from the United States was valid.

---

[9] For the sake of thoroughness, the Court notes Defendant also cannot satisfy element two of § 1326(d). Defendant contends he could not seek judicial review of the removal order (element two) because 8 U.S.C. § 1252(a)(2)(c) essentially prohibits federal courts from reviewing removal orders when the alien is removed due to an underlying drug conviction. Defendant's argument is misguided. Although the scope of the review may have been somewhat limited due to Defendant's underlying drug-related conviction, relevant statutory language also provides that nothing in that provision "shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section." 28 U.S.C. § 1252(a)(2)(D). The Court is, thus, satisfied that the governing statute provided Defendant with the opportunity for obtaining judicial review of his removal order at least with respect to the issue he now belatedly raises—the Immigration Court's jurisdiction. Finally, Defendant suggests he can satisfy both elements two and three of § 1326(d)—lack of judicial review and fundamental unfairness—because the Immigration Court improperly classified his underlying state court conviction as an "aggravated felony." In support of this contention, Defendant cites *United States v. Reyes-Castro*, 13 F.3d 377 (10th Cir. 1993), for the proposition that "a defendant can vault both the denial-of-judicial-review and fundamental-unfairness hurdles by showing that the immigration court incorrectly classified a conviction as an aggravated felony." Doc. 60 at 12. The Court has read *Reyes-Castro* and agrees that the defendant in that case raised the same argument, which was duly considered by the Tenth Circuit. Under the facts of this case, however, Defendant still cannot establish that he was improperly denied judicial review—element two of § 1326(d). Defendant could have sought (but made no attempt to seek) judicial review of the Immigration Court's "aggravated felony" classification before these proceedings. Defendant claims the resolution of this issue is a pure question of law. Doc. 60 at 13. (stating that the Government will be unable to prove "as a matter of law" that Defendant was convicted of committing an "aggravated felony"). As noted, 28 U.S.C. § 1252(a)(2)(D) permits an alien to seek review of questions of law raised upon a petition for review filed with the appropriate court of appeals. Defendant, thus, still cannot satisfy elements one or two of § 1326(d) even if the Court assumes—for purposes of argument only—that the "aggravated felony" classification was improper and Defendant can, therefore, satisfy element three.

THE COURT THEREFORE ORDERS that Defendant's Motion to Dismiss Count 2 (Doc. 59) is DENIED.

IT IS SO ORDERED.

DATED: November 21, 2018

*/s/ Holly L. Teeter*
HOLLY L. TEETER
UNITED STATES DISTRICT JUDGE